Good morning, Your Honors. May it please the Court, Kenneth Elwin for the petitioners, Nargesingh, his wife and two sons. We're here on a remand, and to begin with, one of our arguments, remand, I'm sorry. Not a remand. No, no, a motion to reopen is what was before. This case had been remanded before. Exactly. In fact, you were one of the judges on that case. I apologize. So we're here because of the motion to reopen before the BIA. Okay. One of the arguments I made, interestingly, was I relied on Chete Waris v. Ashcroft. The government responded, citing Azarte. I was going for the prior regulations, which didn't include the 90-day time limits. Anyway, I'd like to defer to the government's argument, because I believe that's the proper argument. Basically, it was the same standard, though. Yes, it'll be the same standard. So why was this evidence that you're offering in the motion to reopen, was it new and undiscoverable? Was it new and undiscoverable? Absolutely. At the time of the hearing? Absolutely it was, yes. I'd like to just make a point, which one of our main contentions here is that in the BIA decision, the government states in the middle paragraph, page two, that in the incident case, the respondents submit additional evidence regarding conditions in India and evidence from individuals regarding their asylum claim. So we submitted nine documents to the BIA regarding general conditions. So our main contention, and if I say this, I should probably walk away after I say it, because I'll mess it up after. But anyway, the next paragraph, the BIA says, the evidence submitted by the respondents does not show that the conditions with India have materially changed since their departure. So Constantinople, Mohammed, Kaloubi, Watkins, all those cases say that this is not a proper analysis of the evidence that we submitted. This is just a conclusory review of the evidence that we submitted. It should be remanded simply on those cases. And with regards to this, this is all the BIA said with respect to most of our evidence. So that's one point I'd like to get across. The other point is that the BIA did say in that same paragraph that the additional evidence that the respondents attach does not appear to be previously unavailable or undiscoverable. Well, again, well, that's a conclusory statement. And then it does, the BIA. Just take the mother's. Yes. Affidavit. Yes, sir. Which apparently was prepared on. It was prepared in December. Let's see, 11-6-05. Correct. Correct. I'm not sure, but I know it was 2005. Yes. November 2005. Well, anyway, that affidavit, that's when it's dated, but you read it and, you know, you'd never be able to figure out when all these events happened to her. Okay. So I would, yes. So the date is not the critical. And we also know that Mr. Singh was in touch with his mother during the time of the hearing. Absolutely. So he couldn't have asked his mother, how are things going for you? Of course. But, see, the problem is that, and this is what Malti says, so based on this ruling, the relevant question is not whether the evidence predates the original hearing, but whether the new information was unavailable or undiscoverable. That's exactly what the judge asked you. Okay. Why was it undiscoverable for him when his mother knew it? Okay. Because Mr. Singh credibly stated in his affidavit, which has to be taken as true, the fifth document, and unless it's totally unbelievable, we have to accept it as being true. So let me try and answer the question. Because Mr. Singh said his mother told him that she didn't tell him about her interrogation torture because she didn't want to upset Mr. Singh in the United States. That's exactly what he stated. So no matter what, in other words, as a parent, there are certain things I don't tell, well, I would, but my wife wouldn't tell our kids certain things because she wouldn't want to upset them. That's exactly the reason that it was not discoverable. So, again, under Malti, yes. Do you think he had any obligation to ask any questions about how things are going with you, Mom? Well, yes, but that still doesn't negate the fact. Well, so she said, well, everything's great. Don't worry. Don't worry. Everything's great. You don't have to worry about this. Don't worry about it. So then he could put it in his affidavit. Well, I asked my mother about her situation, and she told me not to worry. She told me everything was hunky-dory here in India. Well, that's probably what happened. It's not what his affidavit says, and that's not what her affidavit says. No, her affidavit says she was the record evidence prior. It's carefully written not to have any dates in it. Well, I don't think this was a hint. Okay, no, we're giving you the fact that she was tortured prior to 1997. I mean, I'll assume that into evidence or into argument. I mean, that's not a problem. It's just that that fact, she wasn't going to tell him out of respect for her son. I don't want to upset you. You're fighting. How do things change now? Now she's willing to upset him by telling him. Because I think now. Because now he lost a hearing. Now he needs some new evidence. And so she says, well, now I don't mind upsetting you, pal. Okay, well, it sounds like what you're implying is that they're making all this stuff up. But, I mean, you know, he probably went to his mother. I mean, I'm the one that would probably say, is there any new information that you can get based on this October 2003 ruling in which the government, excuse me, in which the BIA stated in its 2003 decision that all of your other family members are living there. No problem. You've never submitted any evidence. So now we've got a case that says, well, gee, this was probably a crucial piece of evidence. And he can go to the mother and say, what's now? What's going on based on that? And then she says, well, okay, I will upset you now. I'm being funny. But, you know, now that, well, I really was. I didn't tell you that because I didn't want to upset you. I mean, she didn't realize at the time that. Let me ask you this. Sure. If you were offering a definition of nondiscoverable, how would you define it? I mean, we have to apply these rules. Well, it was according to multiple. You're writing a regulation and you're going to give a definition of nondiscoverable. What would you say? If I would have asked my mother to. . . No, no, no. You're not answering my question. Do you think such a. . . Well, let me help you along. Okay. Do you think such a definition might encompass the notion of diligence in some part? I'm sure. . . Yes. Yes. Okay. So that seems like a reasonable way to look at the term. Okay. Okay. You exercise some diligence to get the information. Okay. And it just wasn't there. Okay. Lo and behold, later on you find out. Okay. And you can tell the court. You can tell the BIA, yes, I tried to get this information. Here's what I did. I did this, this, and this. Okay. I mean, let's. . . I mean, the facts of this case is that it just wasn't discoverable based on Malti. I mean, we're making up new. . . Why don't you save the minutes you have left for. . . I will. Just one point I wanted to make is that, yes, even if we concede Malti was previously discoverable, we've got all these other documents, general conditions. If he goes back, they're going to. . . there's no place he can hide. There's all 50 pages worth of evidence that shows that now if we look at it, he's going to have a problem. Okay. He's going to get persecuted. And now if we make that decision based on all the past credible testimony and past credible evidence, we're going to have an opportunity to make a decision based on the evidence, and along with the new evidence which has to be taken is true. Thank you. I'll. . . Okay. Thanks very much. I'll give you a minute for rebuttal. Thanks. Good morning, Your Honors, and may it please the Court. Daniel Smulo on behalf of Attorney General Holder. With respect to the transitional rules, it appears that the parties are now in agreement that they do not apply here, so I'll move on and discuss very briefly the mother's affidavit, which seems to be, you know, still somewhat at issue. Well, that wasn't the only piece of evidence that he submitted in support of the motion to reopen. That's just one. That's true. It's the one that the Board focused on, and it's the one that, assuming we knew when these alleged events, that is, the arrest occurred, would presumably be the most material and, therefore, relevant to his claim. So, you know, the Board focused on that one, I think, for good reason. The point here is the regulation, in effect at the time, required that it be material and not discoverable. Certainly the conversation in the record makes clear that Mr. Singh was in touch with his mother during the hearing, and my brother counsel offers a very plausible explanation as to why the mother may not have told him at that time. Another plausible explanation is that it's an after-the-fact invention. We don't know what the answer is, and to a large degree, it's really immaterial. The point is it was discoverable he was in conversation with his mother. For that reason, you know, the Board's decision here was absolutely correct. I'd remind the Court, of course, that under the Supreme Court case law, motions to reopen are disfavored. For these reasons, I'd ask the Board, the Court, if there are no further questions, I'd submit on the briefs. It was a discretionary decision. It was a discretionary decision. That's correct. We would have to conclude that they, on this record, they abused their discretion. That's right. And there's, again, with the evidence as it now stands, there's simply no basis for the Court to do that. For that reason, I'd ask the Court to deny the petition and submit on the briefs. If there are no further questions. No questions, it appears. Thank you, Your Honors. I believe what the government's now saying is that they based their decision on discretion. I mean, what this Court has to do is look at really the reasons that the BIA made its decision, and it didn't base it on discretion. Again, I would submit that most of the documents that we submitted were previously unavailable. All right. We got it. Okay. Thank you very much. Thank you. Thank you. We appreciate counsel's arguments. The matter of Narinder Singh v. Holder is submitted.
judges: Duffy, Paez, Bea